1  MIHRAN YEZBEKYAN (SBN 322233)
       *MYezbekyan@btlaw.com*
2  ERIN M. GILMORE (SBN 324319)
       *EGilmore@btlaw.com*
3  **BARNES & THORNBURG LLP**
   2029 Century Park East, Suite 300
4  Los Angeles, California 90067-2904
   Telephone:    (310) 284-3880
5  Facsimile:    (310) 284-3894

6  ROBYN S. MAGUIRE (*pro hac vice forthcoming*)
       *RMaguire@btlaw.com*
7  **BARNES & THORNBURG LLP**
   One Marina Park Drive, Suite 1530
8  Boston, Massachusetts 02210
   Telephone:    (617) 316-5310
9  Facsimile:    (617) 316-5311

10 Attorneys for Defendants JOHNSON &
   JOHNSON; JANSSEN
11 PHARMACEUTICALS, INC.; and
   JANSSEN RESEARCH &
12 DEVELOPMENT, LLC

13

14                  **UNITED STATES DISTRICT COURT**

15     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

16 | BRIDGETT BROWN,                        | Case No. 3:25-cv-04318-SI

17 |          Plaintiff,                    | **DEFENDANTS JOHNSON & JOHNSON;**
                                             **JANSSEN PHARMACEUTICALS, INC.;**
18 |     v.                                 | **AND JANSSEN RESEARCH &**
                                             **DEVELOPMENT, LLC'S NOTICE OF**
19 | JOHNSON & JOHNSON; JANSSEN             | **MOTION AND MOTION TO DISMISS**
   | PHARMACEUTICALS, INC.; JANSSEN         | **PLAINTIFF'S FIRST AMENDED**
20 | RESEARCH & DEVELOPMENT, LLC; ELI       | **COMPLAINT (FED. R. CIV. P. 12(b)(6));**
   | LILLY AND COMPANY; CHEPLAPHARM         | **MEMORANDUM OF POINTS AND**
21 | ARZNEIMITTEL GMBH; KAISER              | **AUTHORITIES IN SUPPORT THEREOF**
   | PERMANENTE INTERNATIONAL; and
22 | DOES 1 through 100, inclusive,

23 |          Defendants.                   | **Judge:     Hon. Susan Illston**
                                             **Ctrm:      Videoconference**
24 |                                        | **Date:      July 18, 2025**
                                             **Time:      10:00 a.m.**

25 |                                        | Action Filed:   April 21, 2015
                                             Action Removed: May 20, 2025
26 |                                        | Trial Date:     None Set

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT**

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on July 18, 2025, at 10:00 a.m., or as soon thereafter as the matter can be heard via videoconference by the Honorable Susan Illston, of the United States District Court Northern District of California, located at San Francisco Courthouse, Courtroom 1 – 17th Floor, 450 Golden Gate Ave., San Francisco, California 94102, Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., and Janssen Research & Development, LLC,[1] will and hereby do move this Court to dismiss all claims brought by Plaintiff Bridgett Brown ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6), 8, and 9(b).

Plaintiff has failed to plausibly plead her strict liability and negligent failure to warn claims (Counts I-III) for three independent reasons: *First*, Plaintiff's First Amended Complaint ("FAC") fails to allege facts supporting her claims against JJIM because it: (1) constitutes an impermissible shotgun pleading, which falls well below Ninth Circuit pleading standards; and (2) omits critical facts regarding when and how long Plaintiff used Risperdal® ("Risperdal")—information essential to Plaintiff's claims regarding the adequacy of warnings at the time of JJIM's manufacture and distribution of the prescription medication. *Second*, regardless of when Plaintiff took Risperdal (a fact yet unpled), there is no plausible, "prevailing" scientific evidence supporting her causal theory of breast cancer risk, particularly in light of the fact that the United States Food and Drug Administration ("FDA") recently rejected this theory. *Third,* given the FDA's **January 2025** analysis of the very claims asserted here, and its mandated warnings language on the prescription medications at issue, all of Plaintiff's claims are preempted by federal law.

Moreover, Plaintiff's fraud claim (Count IV) is not pleaded with the particularity required under Fed. R. Civ. P. 9(b) and similarly fails. Plaintiff's prayer for (and allegations regarding) punitive damages are similarly without basis and implausibly asserted, warranting their dismissal.

---

[1] Johnson & Johnson denies that it is a properly-named Defendant in this action, as it did not design, manufacture, label, market, distribute, or sell Risperdal® or risperidone. Johnson & Johnson is a parent and holding company that is a separate and distinct legal entity from Defendants Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC (together, now known as Johnson & Johnson Innovative Medicine ("JJIM" or the "JJIM Defendants")).

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Because further amendment of Plaintiff's FAC would be futile, this case should be dismissed

2  in its entirety, with prejudice.

3  This motion is based on the Notice of Motion and Motion, the Memorandum of Points and

4  Authorities, the Declaration of Mihran Yezbekyan, JJIM's Request for Judicial Notice and the

5  pleadings and papers filed therein.

6  Dated:  May 23, 2025                    **BARNES & THORNBURG LLP**

7

8                                          By:   _/S/ Mihran Yezbekyan_

9                                               Robyn S. Maguire (*pro hac vice forthcoming*)
                                               Mihran Yezbekyan
10                                              Erin M. Gilmore
                                               Attorneys for Defendants JOHNSON &
11                                              JOHNSON; JANSSEN PHARMACEUTICALS,
                                               INC.; and JANSSEN RESEARCH &
12                                              DEVELOPMENT, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................................2

    A.    The Parties and Plaintiff's Claims. .......................................................................2

    B.    Comprehensive Federal Regulatory Scheme Governing Pharmaceutical
          Drugs. ....................................................................................................................3

    C.    FDA Approval of Risperdal and the Warning Label. ...........................................6

    D.    The January 2025 Risperdal Label Change. ..........................................................7

III.  LEGAL STANDARD ..............................................................................................8

IV.   ARGUMENT .............................................................................................................9

    A.    Plaintiff Has Failed to Plausibly Plead Her Claims Under Rule 8. ......................9

        1.    Plaintiff's FAC is Devoid of Facts Supporting Her Causes of Action
                 Against JJIM. .............................................................................................9

        2.    The FDA Determined that Plaintiff's Alleged Causal Theory is
                 Implausible. ..............................................................................................11

    B.    All of Plaintiff's Claims Are Impliedly Preempted by Federal Law. ..................13

        1.    Plaintiff Cannot Identify Any "Newly Acquired Information." .................14

        2.    The 2025 Label Change Constitutes "Clear Evidence" that the FDA
                 Would Have Rejected Plaintiff's Desired Warning. ...................................17

        3.    To the Extent Plaintiff Pleads a Design Defect Under Count II
                 (General Negligence), It Is Preempted by Federal Law. .............................18

    C.    The Balance of Plaintiff's "General Negligence" Allegations Fail
          Independently. .....................................................................................................19

    D.    Plaintiff's Fraud Claim (Count IV) Fails Because Plaintiff Does Not and
          Cannot Satisfy the Heightened Pleading Standard Under Rule 9(b). ..................20

    E.    Plaintiff's Prayer for (and Allegations Regarding) Punitive Damages Should
          Be Stricken. .........................................................................................................21

V.    CONCLUSION .......................................................................................................22

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amiodarone Cases*, 84 Cal. App. 5th 1091 (2022) ............................................................. 14, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................... 1, 8, 9, 22

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ............................................................. 8

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    No. 17-CV-05921-WHO, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018), *aff'd*,
    945 F.3d 1225 (9th Cir. 2019) ........................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................... 1, 8, 9, 22

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ............................................................. 14, 15, 21

*Bueno v. Merck & Co.*,
    746 F. Supp. 3d 853 (S.D. Cal. 2024) ............................................. 13, 14, 17

*Carlin v. Superior Ct.*,
    13 Cal. 4th 1104 (1996)............................................................. 9, 10

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011)............................................................. 9

*Curtis v. ABB Inc.*,
    No. CV 12-2014 PA, 2016 WL 519159 (C.D. Cal. Feb. 8, 2016) ................................ 1

*Destfino v. Kennedy*,
    No. CV-F-08-1269 LJO DLB, 2009 WL 63566 (E.D. Cal. Jan. 8, 2009), *aff'd*
    *sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) .......................... 9

*Dreifort v. DJO Glob. Inc.*,
    No. 3:18-cv-02393-BTM-KSC, 2019 WL 5578240 (S.D. Cal. Oct. 28, 2019) ................ 11

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ........................................................... 13

*Evans v. Gilead Scis., Inc.*,
    No. 20-CV-00123-DKW-KJM, 2020 WL 5189995 (D. Haw. Aug. 31, 2020) ................ 18

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS AND AUTHORITIES**

*Exxon Shipping Co. v. Baker,*
    554 U.S. 471 (2008) ............................................................................ 22

*Feindt v. United States,*
    No. CV 22-00397 LEK-KJM, 2024 WL 1532747 (D. Haw. Apr. 9, 2024) ...................... 12

*Hornsby v. Alcoa, Inc.,*
    715 F. App'x 642 (9th Cir. 2017) ............................................................................ 12

*In re Incretin-Based Therapies Prods. Liab. Litig.,*
    524 F. Supp. 3d 1007 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595
    (9th Cir. Mar. 28, 2022) ...................................................................................*passim*

*Jager v. Davol Inc.,*
    No. EDCV 16-1424 JGB (KKx), 2017 WL 696081 (C.D. Cal. Feb. 9, 2017) .................... 11

*Kociemba v. G.D. Searle & Co.,*
    707 F. Supp. 1517 (D. Minn. 1989) ............................................................................ 19

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991) ............................................................................ 10, 21

*Latiolais v. Merck & Co.,*
    No. CV 06-02208 MRP, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007), *aff'd*, 302
    F. App'x 756 (9th Cir. 2008) ............................................................................ 19

*Lightfoot v. Georgia-Pac. Wood Prods., LLC,*
    5 F.4th 484 (4th Cir. 2021) ............................................................................ 12

*Mahnke v. Bayer Corp.,*
    No. 2:19-cv-07271-RGK-MAA, 2019 WL 8621437 (C.D. Cal. Dec. 10, 2019).............*passim*

*Mahnke v. Bayer Corp.,*
    No. 2:19-CV-07271-RGK-MAA, 2020 WL 2048622 (C.D. Cal. Mar. 10, 2020)...... 13, 15, 16

*Maryland v. Louisiana,*
    451 U.S. 725 (1981) ............................................................................ 13

*Merck KGaA v. Integra Lifesciences I, Ltd.,*
    545 U.S. 193 (2005) ............................................................................ 3

*Merck Sharp & Dohme Corp. v. Albrecht,*
    587 U.S. 299 (2019) ...................................................................................*passim*

*Mut. Pharm. Co. v. Bartlett,*
    570 U.S. 472 (2013) ............................................................................ 4, 13, 18, 19

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ............................................................................ 20

**TABLE OF CONTENTS AND AUTHORITIES**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

*Quinn v. Proctor & Gamble Co.*,
    No. 24-CV-856 JLS (SBC), 2025 WL 437905 (S.D. Cal. Feb. 6, 2025) ................................ 1

*Rhynes v. Stryker Corp.*,
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................ 22

*Roshkovan v. Bristol-Myers Squibb Co.*,
    No. 2:21-CV-08590-FWS-AGR, 2023 WL 6787444 (C.D. Cal. Sept. 19, 2023),
    *aff'd*, No. 23-2912, 2025 WL 972978 (9th Cir. Apr. 1, 2025) ........................... 13, 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................................ 20

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) .................................................................................. 20

*Sherman v. Stryker Corp.*,
    No. SACV 09-224 JVS (ANx), 2009 WL 2241664 (C.D. Cal. Mar. 30, 2009) .............. 10, 20

*Shoemaker v. Myers*,
    52 Cal. 3d 1 (1990) ................................................................................................ 20

*Sollberger v. Wachovia Sec., LLC*,
    No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30,
    2010) ...................................................................................................................... 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................... 9

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................................................ 11

*Todd v. Stryker Corp.*,
    No. 2:09-CV-01509-JAM, 2012 WL 2922727 (E.D. Cal. May 1, 2012) .................... 19

*Trejo v. Johnson & Johnson*,
    220 Cal. Rptr. 3d 127 (Cal. Ct. App. 2017) .......................................................... 18

*United States v. Sequel Contractors, Inc.*,
    402 F. Supp. 2d 1142 (C.D. Cal. 2005) ................................................................. 20

*Utts v. Bristol-Myers Squibb Co.*,
    226 F. Supp. 3d 166 (S.D.N.Y. 2016) ................................................................... 18

*Valentine v. Baxter Healthcare Corp.*,
    81 Cal. Rptr. 2d 252 (Cal. Ct. App. 1999) ........................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................ 20

**TABLE OF CONTENTS AND AUTHORITIES**

*Warner v. Amgen Inc.*,
    No. 1:24-CV-10632-JEK, 2025 WL 490720 (D. Mass. Feb. 13, 2025) ................................. 17

*Wilson v. Boehringer Ingelheim Pharms., Inc.*,
    No. 22-CA-000284, 2024 WL 4007445 (Fla. Cir. Ct. Aug. 15, 2024) .................................. 11

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................................. 4, 13

**Statutes**

21 U.S.C. § 301 et seq. ...................................................................................... 14, 21

21 U.S.C. § 321(m) ..................................................................................................... 5

21 U.S.C. § 355 ........................................................................................................... 4

21 U.S.C. § 355(a) ....................................................................................................... 3

21 U.S.C. § 393(b) ....................................................................................................... 4

21 U.S.C. § 355(b)(1)(A)(vi) ...................................................................................... 4

21 U.S.C. § 355(d)(5) .................................................................................................. 5

21 U.S.C. § 355(d)(7) .................................................................................................. 4

21 U.S.C. § 355(o)(4)(A) ............................................................................................ 5

21 U.S.C. § 355(o)(4)(B) ............................................................................................ 5

**Other Authorities**

21 C.F.R. § 201.56 ...................................................................................................... 4

21 C.F.R. § 201.57(c) .............................................................................................. 4, 5

21 C.F.R. § 201.57(e) (2003) .................................................................................... 12

21 C.F.R. §§ 314.1-314.3 ............................................................................................ 4

21 C.F.R. § 314.2 ........................................................................................................ 6

21 C.F.R. § 314.50 ...................................................................................................... 4

21 C.F.R. § 314.50(c)(2)(i) ......................................................................................... 4

21 C.F.R. § 314.70(b) ................................................................................................. 5

21 C.F.R. § 314.70(b)(2)(i) ....................................................................................... 18

**TABLE OF CONTENTS AND AUTHORITIES**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

21 C.F.R. § 314.70(c)(6)(iii) ........................................................................... 5

21 C.F.R. §§ 314.70 (c)(7) .............................................................................. 5

21 C.F.R. § 314.105(b) ................................................................................... 4

43 Fed. Reg. 21051, 21051-52 (May 16, 1978) .............................................. 6

43 Fed. Reg. 36696, 36696-97 (Aug. 18, 1978) ............................................. 6

45 Fed. Reg. 52931, 52931-33 (Aug. 8, 1980) ............................................... 6

Fed. R. Civ. P. 8 ................................................................................... 9, 10, 11

Fed. R. Civ. P. 8(a) ....................................................................................... 8

Fed. R. Civ. P. 8(a)(2) .................................................................................. 9

Fed. R. Civ. P. 9(b) .................................................................................. 2, 20

Fed. R. Civ. P. 12(b)(6) ................................................................................ 8

Fed. R. Civ. P. 12(f) ..................................................................................... 20

U.S. Const., art. VI, cl. 2 .............................................................................. 13

**TABLE OF CONTENTS AND AUTHORITIES**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

For more than four decades, the FDA has monitored the science concerning a potential association between a class of prolactin-elevating, antipsychotic medications (including Risperdal, Zyprexa, and others) and breast cancer.  The Agency has **never** mandated the warning for which Plaintiff Bridgett Brown advocates in the FAC—not even four months ago, when it clearly and unequivocally concluded that the results of the very studies Plaintiff cites to are "inconsistent," and manufacturers need only say that in the approved labeling accompanying the medications. Plaintiff's unsupported contention that the FDA's conclusion was "flatly wrong" is an insufficient basis to support any cause of action against Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Eli Lilly and Company, and Cheplapharm Arzneimittel GmbH ("Cheplapharm").  FAC ¶ 79.  As such, all of Plaintiff's claims— universally grounded in a failure to warn theory—are implausible, preempted, and otherwise collectively fail, as a matter of law.[2]

*First*, all of Plaintiff's claims fail under the pleadings standards set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), for two reasons: the FAC: (1) is a shotgun pleading that impermissibly fails to distinguish between each Defendant's purported conduct; and (2) omits critical details regarding Plaintiff's product use, rendering Plaintiff's failure to warn theory implausible, at the outset.  Under California law, a drug manufacturer's duty to warn flows only from **known or knowable** risks at the time of manufacture.  Because Plaintiff has not

---

[2] Plaintiff alleges that defendants Eli Lilly and Company and Cheplapharm are responsible for Zyprexa.  FAC ¶¶ 9-10, 28.  Accordingly, this Motion addresses Plaintiff's alleged use of Risperdal only.  Moreover, although Plaintiff also references another medication, Invega®, the FAC contains no allegations that Plaintiff ever used Invega®, and it therefore is not properly at issue in this case. *Id.* ¶ 98; *see Quinn v. Proctor & Gamble Co.*, No. 24-CV-856 JLS (SBC), 2025 WL 437905, at *11 (S.D. Cal. Feb. 6, 2025) (holding that, "[w]ith the post-*Twombly* emphasis on the plausibility of the claims, a plaintiff in a defective product suit must allege more than a 'class[ ] of products' or even a product line, as some courts have allowed in the past" (internal citations omitted)); *see also Curtis v. ABB Inc.*, No. CV 12-2014 PA (FMOx), 2016 WL 519159, at *1 (C.D. Cal. Feb. 8, 2016) ("In order to prevail in products liability cases, a plaintiff must establish, at minimum, (1) the plaintiff was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury suffered." (internal quotation marks and citations omitted)).

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

alleged key facts regarding the timing of her Risperdal use, there is no way to evaluate the adequacy of JJIM's warnings at the relevant time(s). Moreover, Plaintiff's failure to plausibly identify the "prevailing scientific knowledge" in light of the FDA's recent conclusions renders her claims meritless.

*Second*, all of Plaintiff's claims are preempted under federal law. Plaintiff has not met the threshold requirement of identifying "newly-acquired information" that would have permitted JJIM to add a stronger breast cancer warning for Risperdal at any time, let alone before she used the product. And even if such information did exist, there is clear evidence that the FDA would have ultimately rejected the warning for which Plaintiff advocates because the FDA *did* reject Plaintiff's proposed warning just a few months ago, when reviewing this very issue.

*Third*, Plaintiff's fraud claim, along with her allegations and prayers for punitive damages as to each count of the FAC fail independently, as she has not pleaded fraud with the particularity required under Fed. R. Civ. P. 9(b). She likewise fails to plausibly allege any conduct to support a punitive damages award.

Because amendment cannot cure the fundamental failings in the FAC, all of her claims should be dismissed, with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and Plaintiff's Claims.

Plaintiff filed this action in the Superior Court of the State of California, County of Alameda on April 21, 2025. *See generally* Compl. She thereafter filed the FAC on May 12, 2025, before any defendant appeared in the case. The FAC names and defines as "Defendant Drug Makers" Eli Lilly and Company; Cheplapharm Arzneimittel GmbH; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; and Janssen Research & Development, LLC. FAC ¶¶ 9-12. Plaintiff also names Kaiser Permanente International, the pharmacy at which she filled her prescriptions. *Id*. ¶¶ 16, 99. On May 20, 2025, Defendants timely removed this action to this Court, based on diversity jurisdiction of all properly joined defendants (disregarding Defendant Kaiser Permanente's citizenship because it was fraudulently joined in this action). *See* Dkt. No. 1.

Plaintiff's FAC asserts state-law causes of action for strict product liability - failure to warn

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

(Count I), general negligence (Count II), negligence - failure to warn (Count III), and fraud based on Defendants' design, manufacture, sale, marketing, advertising, promotion, testing, labeling, and packaging of brand and generic Risperdal and Zyprexa (Count IV). *See generally* FAC ¶¶ 110-62. Plaintiff generally alleges that, "[p]rior to and during the time Plaintiff ingested Defendants' Drugs, Defendant Drug Makers knew or should have known about studies authored by independent researchers and published in peer-reviewed scientific journals . . . that demonstrated an association between these drugs and breast cancer." *Id.* ¶ 83. She further contends that "prolonged exposure" to atypical antipsychotic drugs causes elevated production of prolactin (a hormone secreted from the pituitary gland with multiple functions, including to promote milk production after childbirth). *See id.* ¶¶ 2, 4, 35, 60-64. In turn, she asserts that "[a]bnormally high prolactin" leads to a condition known as hyperprolactinemia, which she claims is associated with adverse health conditions, including breast cancer—a diagnosis she received in 2024. *Id.* ¶¶ 2, 4, 35, 60-64, 105. Apart from the date of her diagnosis, the ***only*** allegations specific to Plaintiff in her 164-paragraph FAC are that: (1) she allegedly "consumed both brand-name and generic Risperdal and Zyprexa" (*id.* ¶ 98); and (2) she obtained the drugs from Kaiser Permanente (*id.* ¶ 99). Significantly, Plaintiff fails to allege ***when*** she used each of the drugs, the ***duration*** of her alleged use of each drug, and the medical condition(s) for which each drug was allegedly prescribed, among other details. *See generally id.* ¶¶ 1-7, 27, 98-106.

The gravamen of each of Plaintiff's causes of action is that Defendants failed to warn of a purported risk of breast cancer associated with Risperdal and Zyprexa, even though the FDA found that epidemiologic studies exploring such a risk (as recently as January 2025) have been, and remain today, "inconsistent." *See id.* ¶¶ 78-79, 110-21. Without more than her own unsupported conclusions, Plaintiff simply has no plausible basis to upend four decades of scientific analysis and the regulatory framework within which these drugs are manufactured and sold. *See id.*

**B.** **Comprehensive Federal Regulatory Scheme Governing Pharmaceutical Drugs.**

The Federal Food, Drug, and Cosmetic Act ("FDCA") "regulates the manufacture, use, or sale of drugs." *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 196 (2005) (quoting 21 U.S.C. § 355(a)); *see also In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007,

1014 (S.D. Cal. 2021), *aff'd*, No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022). Drug manufacturers must obtain approval from the FDA before marketing or selling a new pharmaceutical drug. *See* 21 U.S.C. §§ 355(a), 393(b). To obtain FDA approval, a drug manufacturer is required to file a new drug application ("NDA"), which includes comprehensive information regarding the drug's safety and efficacy, performance in clinical investigations and nonclinical studies, chemical composition, and the methods used in the manufacture, processing, and packaging. *See id*. § 355(b)(1)(A); 21 C.F.R. § 314.50; *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 476 (2013). The FDA conducts a rigorous scientific review to deem a medication safe and effective for its intended use. *See* 21 U.S.C. §§ 355(a), 393(b).

As part of the NDA process, a manufacturer must also submit the proposed label for the FDA's review, including the text of the label and "annotations to the information in the summary and technical sections of the NDA that support the inclusion of each statement in the labeling, and, if the NDA is for a prescription drug, statements describing the reasons for omitting a section or subsection of the labeling format." 21 C.F.R. § 314.50(c)(2)(i); *see also* 21 C.F.R. §§ 314.1-314.3; 21 U.S.C. § 355(b)(1)(A)(vi). Moreover, under 21 C.F.R. § 201.57(c), "drug labels [are required] to include, among other things: (1) prominent 'boxed' warnings about risks that may lead to death or serious injury; (2) contraindications describing any situation in which the drug should not be used because the risk of use outweighs any therapeutic benefit; (3) warnings and precautions about other potential safety hazards; and (4) any adverse reactions for which there is some basis to believe a causal relationship exists between the drug and the occurrence of the adverse event." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 304 (2019).

Given the exacting nature of drug labeling, "[t]he FDA's premarket approval of a new drug application includes the approval of the exact text in the proposed label." *Wyeth v. Levine*, 555 U.S. 555, 568 (2009) (citing 21 U.S.C. § 355; 21 C.F.R. § 314.105(b)). The FDA dictates the content of the label "based on a fair evaluation of all material facts" to ensure that it is not "false or misleading."

21 U.S.C. § 355(d)(7); *see* 21 C.F.R. § 201.56.[3]  Finally, the FDA authorizes a drug for marketing

and sale **only when** there is "substantial evidence" demonstrating that it is safe and effective for its

intended use and "will have the effect it purports or is represented to have under the conditions of

use prescribed, recommended, or suggested in the proposed labeling[.]"  21 U.S.C. § 355(d)(5).

Once approved, a manufacturer is prohibited from marketing the medication with a label that differs

from the exact text of the approved label.  *Id*. §§ 352(a), (f).

After initial approval, most labeling changes require preapproval by the FDA.  *See* 21 C.F.R.

§ 314.70(b).  A limited exception under the FDA's "Changes Being Effected" ("CBE") regulation,

21 C.F.R. § 314.70(c)(6)(iii), allows "the holder of an approved NDA" to revise the label and begin

distributing relabeled product upon submitting an application requesting FDA approval.  This

process is available "[t]o add or strengthen a contraindication, warning, precaution, or adverse

reaction for which the evidence of a causal association satisfies the standard for inclusion in the

labeling under § 201.57(c)," which requires "a warning about a clinically significant hazard as soon

as there is reasonable evidence of a causal association with a drug."  *Id*. §§ 314.70(c)(6)(iii)(A),

201.57(c)(6)(i).  Of note, the FDA maintains authority to reject any proposed label changes, even

those proposed on "reasonable evidence."  *Albrecht*, 587 U.S. at 315 (citing 21 C.F.R. §§

314.70(c)(6)(iii)(A), (c)(7)).

The FDA also has its own statutory obligation to ensure that warning labels are complete,

correct, and up-to-date.  Under 21 U.S.C. § 355(o)(4)(A), if the FDA "becomes aware of new

information, including any new safety information . . . that the [FDA] determines should be included

in the labeling of the drug," then the FDA "shall promptly notify" the manufacturer.  The

manufacturer must either propose labeling changes to the approved labeling to reflect new safety

information or explain why no change is needed.  *See* 21 U.S.C. § 355(o)(4)(B).  Under either

scenario, the FDA **always** has final say and may ultimately order labeling revisions it deems

---

[3] In this context of the FDCA, the term "label" refers "broadly to the written material that is sent to
the physician who prescribes the drug and the written material that comes with the prescription
bottle[.]"  *Albrecht*, 587 U.S. at 303-04 (citing 21 U.S.C. § 321(m)).  "Labeling" also embraces "all
labels and other written, printed, or graphic matter (1) upon any article or any of its containers or
wrappers, or (2) accompanying such article."  21 U.S.C. § 321(m).

"appropriate to address the new safety . . . information." *Id*. § 355(o)(4)(C), (E).

**C.    FDA Approval of Risperdal and the Warning Label.**

Risperdal is part of a class of antipsychotic prescription medications used to treat serious mental illness (including schizophrenia) by blocking dopamine receptors in the brain. *See* FAC ¶¶ 2, 35. Between 1978-1980, the FDA considered and ultimately adopted class labeling regarding the risks of hyperprolactinemia for all antipsychotic medications, meaning that all such medications were required to bear an identical warning. *See* Declaration of Mihran Yezbekyan ("Yezbekyan Decl."), **Ex. B**,[4] 43 Fed. Reg. 21051, 21051-52 (May 16, 1978) (recognizing risk of hyperprolactinemia based on a toxicology analysis of rodent studies involving chronic administration of antipsychotic drugs), **Ex. C**, 43 Fed. Reg. 36696, 36696-97 (Aug. 18, 1978) (revising the physician labeling statement to include information regarding the limited nature of tumorigenesis in humans, but recommending periodic breast examinations in patients with previously detected breast cancer or a strong family history of breast cancer), **Ex. D**, 45 Fed. Reg. 52931, 52931-33 (Aug. 8, 1980) (further revising hyperprolactinemia language to be included in the "Precautions" section of physician labeling for all antipsychotic drugs). On December 29, 1993, the FDA approved Risperdal as "safe and effective" for "management of the manifestations of psychotic disorders." *See* FAC ¶ 39; Yezbekyan Decl., **Ex. A**, 1993 Risperdal Label, at 2; *see also* 21 C.F.R. § 314.2 (a prerequisite to FDA approval is a finding by the FDA that the drug is "safe and effective").[5] The original 1993 FDA-approved Risperdal label contained the FDA's class warning for hyperprolactinemia, as follows:

---

[4] JJIM requests that the Court take judicial notice of the publicly-available labels and other materials cited herein, as noted in the contemporaneously filed Request for Judicial Notice ("RJN"). Each such document is annexed to the accompanying Declaration of Mihran Yezbekyan.

[5] The FAC contains only a generalized allegation that Plaintiff "consumed both brand-name and generic Risperdal and Zyprexa" prescribed by her physicians and omits critical details about her product use—most notably, the specific formulation(s) of Risperdal she was prescribed and used. FAC ¶¶ 1-7, 98-106. However, given Plaintiff's reference to, and apparent reliance on, NDA 020272 for Risperdal (tablet, oral) (*id*. ¶ 39), Defendants include herewith the relevant labels for NDA 020272 and note that the warnings and information regarding the relevant risks of hyperprolactinemia and breast cancer accompanying Risperdal (in any formulation) at any given time were identical to one another.

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

> ***Hyperprolactinemia: As with other drugs that antagonize dopamine
> D2 receptors, risperidone elevates prolactin levels and the elevation
> persists during chronic administration. Tissue culture experiments
> indicate that approximately one-third of human breast cancers are
> prolactin dependent in vitro, a factor of potential importance if the
> prescription of these drugs is contemplated in a patient with
> previously detected breast cancer.*** Although disturbances such as
> galactorrhea, amenorrhea, gynecomastia, and impotence have been
> reported with prolactin-elevating compounds, the clinical
> significance of elevated serum prolactin levels is unknown for most
> patients. As is common with compounds which increase prolactin
> release, an increase in pituitary gland, mammary gland, and
> pancreatic islet cell hyperplasia and/or neoplasia was observed in the
> risperidone carcinogenicity studies conducted in mice and rats (See
> CARCINOGENESIS). ***However, neither clinical studies nor
> epidemiologic studies conducted to date have shown an association
> between chronic administration of this class of drugs and
> tumorigenesis in humans; the available evidence is considered too
> limited to be conclusive at this time.***

11 *See* Yezbekyan Decl., **Ex. A**, at 2 (emphasis added). The FDA's pre-approval Safety Review for

12 NDA 20-272, Risperdal (risperidone), dated November 7, 1993, further addressed

13 hyperprolactinemia and, under "Additional information on important drug related adverse events[,]"

14 stated, "Prolactin Elevation[:] There was no additional information on this finding." *See id.*, **Ex. E**,

15 NDA Safety Review for Risperdal, at 10-11.

16 On October 6, 2006, JJIM updated the hyperprolactinemia section of the Risperdal label for

17 the first time when the FDA approved a pediatric indication for irritability associated with autistic

18 disorder in children and adolescents. *See* FAC ¶ 63; Yezbekyan Decl., **Ex. F**, 2006 Risperdal Label.

19 Notably, the 2006 Risperdal label informed medical providers that, "[r]isperidone is associated with

20 higher levels of prolactin elevation than other antipsychotic agents." *See* Yezbekyan Decl., **Ex. F**,

21 at 15. The FDA determined that no further hyperprolactinemia warnings were required at that time

22 and expressly retained prior language stating that, "[n]either clinical studies nor epidemiologic

23 studies conducted to date have shown an association between chronic administration of this class of

24 drugs and tumorigenesis in humans; the available evidence is considered too limited to be conclusive

25 at this time." *See id.* at 15-16. That language remained until January 2025.

26     **D.**    **The January 2025 Risperdal Label Change.**

27 The FDA did not publicly revisit the hyperprolactinemia section of the labeling for

28 antipsychotic medications until September 2024. *See id.*, **Ex. G**, 2025 Supplemental Approval

1  Letter from FDA's Division of Psychiatry.  As part of its analysis last year, the agency reviewed all

2  relevant epidemiological studies, including the very studies cited in Plaintiff's FAC, and mandated

3  a revision to the final sentence of the relevant hyperprolactinemia class-wide label, which was then

4  implemented for Risperdal, as follows:

> **5.6 Hyperprolactinemia** As with other drugs that antagonize dopamine $D_2$ receptors, RISPERDAL elevates prolactin levels and the elevation persists during chronic administration. RISPERDAL is associated with higher levels of prolactin elevation than other antipsychotic agents.
> . . .
> Tissue culture experiments indicate that approximately one-third of human breast cancers are prolactin dependent in vitro, a factor of potential importance if the prescription of these drugs is contemplated in a patient with previously detected breast cancer. An increase in pituitary gland, mammary gland, and pancreatic islet cell neoplasia (mammary adenocarcinomas, pituitary and pancreatic adenomas) was observed in the risperidone carcinogenicity studies conducted in mice and rats [see Nonclinical Toxicology (13.1)]. ***Published epidemiologic studies have shown inconsistent results when exploring the potential association between hyperprolactinemia and breast cancer.***

14  *Id.*, **Ex. H**, 2025 Risperdal Label, at 1, 17 (emphasis added); *see also id.*, **Ex. G**.

15  In short, the FDA has been monitoring breast cancer risk associated with Risperdal and other

16  antipsychotic medications for over four decades and has ***never*** concluded that a stronger breast

17  cancer warning, such as the one for which Plaintiff advocates, was or is warranted.  Following yet

18  another review of "new safety information," the most recently approved labels for Risperdal,

19  Zyprexa, and other drugs became effective on January 22, 2025.  *See* Ex. G.

20  **III.  LEGAL STANDARD**

21  A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff is unable to articulate

22  "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

23  Dismissal is proper under Rule 12(b)(6) if the complaint lacks "a cognizable legal theory" or there

24  is an "absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica*

25  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

26  To "state[] a claim," a complaint must include "a short and plain statement of the claim

27  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "[T]he tenet that a court must

28  accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. The Court is also "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir. 2001) (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Finally, a motion to dismiss should be sustained without leave to amend where amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

## IV.    ARGUMENT

### A.    Plaintiff Has Failed to Plausibly Plead Her Claims Under Rule 8.

Plaintiff has failed to establish a plausible basis for any of her claims. *First*, the FAC is deficient because it: (1) is an impermissible shotgun pleading, which falls well below Ninth Circuit standards; and (2) omits critical facts regarding when and how long Plaintiff used Risperdal—facts essential to assessing the adequacy of warnings "at the time of [JJIM'S] manufacture and distribution[]" of the product. *See Carlin v. Superior Ct.*, 13 Cal. 4th 1104, 1111 (1996). *Second*, regardless of when Plaintiff took Risperdal, her interpretation of studies cited in the FAC does not— and cannot—supplant the FDA's own conclusions about the "prevailing" science and the absence of any casual association between Risperdal use and breast cancer risk.

#### 1.    Plaintiff's FAC is Devoid of Facts Supporting Her Causes of Action Against JJIM.

Plaintiff's FAC falls well short of the pleading standard set forth in Rule 8, which requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Ninth Circuit precedent, a complaint against multiple defendants is plausibly pleaded only when it asserts specific facts supporting the claims against each defendant individually. *See Destfino v. Kennedy*, No. CV-F-08-1269 LJO DLB, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009) (granting defendants' motion to dismiss and holding that "[p]leading of this 'shotgun' nature fails to comply with Rule 8"), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011). California courts routinely dismiss shotgun pleadings that "overwhelm

1  defendants with an unclear mass of allegations and make it difficult or impossible for defendants to

2  make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No.

3  SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing claims

4  asserted in shotgun pleading as implausibly pled under Rule 8).

5      Here, Plaintiff's claims do just that.  For example, Plaintiff alleges that all Defendants

6  collectively: engaged in unspecified, "reckless" conduct (FAC ¶ 120); failed to perform adequate

7  testing, research, analysis, and post-marketing surveillance (*id.* ¶ 126); failed to investigate, study,

8  test, or promote the safety of the products (*id.* ¶ 139); and wrongfully concealed information

9  concerning the carcinogenic potential of Defendants' Drugs and made false and/or misleading

10  statements (*id.* ¶ 141).  These assertions cannot reasonably be construed to be lodged against a

11  pharmacy, despite that they are specifically asserted "against all defendants."  *See id.* ¶¶ 110-151

12  (Counts I-III).  Nor are they specific enough to lodge facts supporting individual causes of action

13  against each manufacturer.  *See id.*  Worse yet, given that the FDA approved a January 2025 label

14  change for multiple antipsychotic medications (not just Risperdal and Zyprexa), Plaintiff's vague

15  allegations effectively imply that all drug manufacturers jointly concealed the association between

16  antipsychotic medications and breast cancer for over forty years—an assertion for which there is

17  absolutely no factual support.  *See Sherman v. Stryker Corp.*, No. SACV 09-224 JVS (ANx), 2009

18  WL 2241664, at *2 (C.D. Cal. Mar. 30, 2009) (dismissing negligent and fraudulent

19  misrepresentation claims where plaintiff failed to "specifically allege 'the role of each defendant in

20  each scheme'" (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

21  (9th Cir. 1991))).

22      Beyond these hollow assertions, the FAC omits any facts regarding ***when*** Plaintiff used each

23  of the drugs, the ***duration and frequency*** of her alleged use of each drug, and the medical

24  condition(s) for which Plaintiff's physicians allegedly prescribed each drug.  Without any

25  allegations about the timeframe during which Plaintiff purportedly used the products, there can be

26  no meaningful inquiry into what warnings were provided to her prescribing physicians, let alone

27  whether those warnings were adequate, based on what was known or knowable "at the time of

28  manufacture and distribution."  *See Carlin*, 13 Cal. 4th at 1111 (finding that a drug manufacturer

was not liable based on the failure to warn of risks that were unknown and unknowable at the time of the drug's distribution). Indeed, it is entirely implausible that any "prevailing" scientific support for Plaintiff's proffered causal theory existed ***before*** she used Risperdal, given that no such scientific support exists even today. *See infra* Section IV.A.2; *see also Dreifort v. DJO Glob. Inc.*, No. 3:18-cv-02393-BTM-KSC, 2019 WL 5578240, at \*9 (S.D. Cal. Oct. 28, 2019) (dismissing failure to warn claim where plaintiff failed to allege that study providing purported knowledge of risk "predated [defendant's] manufacture and distribution of the [orthopedic] boot or boots at issue"); *Jager v. Davol Inc.*, No. EDCV 16-1424 JGB (KKx), 2017 WL 696081, at \*7 (C.D. Cal. Feb. 9, 2017) (dismissing warning-based claims under California law where complaint "[did] not indicate that the available scientific knowledge in 2004—when [plaintiff] received the patch—would have imposed a duty on [d]efendants to warn of as-yet-unknown problems"). Accordingly, Plaintiff's claims fail to reach the bar of Rule 8 and must be dismissed. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").

### 2. The FDA Determined that Plaintiff's Alleged Causal Theory is Implausible.

Setting aside the issue of timing, there can be no legal theory supporting Plaintiff's claims because the "prevailing" scientific knowledge is inconsistent, at best. *See* Yezbekyan Decl., **Ex. H**, at 17. Plaintiff offers no new data or other information that could reasonably be construed to challenge the FDA's reasoned analysis or to plausibly support her causation theory other than her own assertion that, "[d]escribing the results of the epidemiology [in the FDA-approved label] as 'inconsistent' [in the January 2025 label] is flatly wrong." FAC ¶ 79. For this statement, she points to a February 2025 review article authored by Steven Bird, M.D.,[6] a well-known plaintiff-side expert. *See e.g.*, *Wilson v. Boehringer Ingelheim Pharms., Inc.*, No. 22-CA-000284, 2024 WL

---

[6] Steven B. Bird, *Antipsychotic-Induced Hyperprolactinemia: Toxicologic Mechanism and the Increased Breast Cancer Risk*, 14 TOXICOL. REPS., 101927 (2025), https://doi.org/10.1016/j.toxrep.2025.101927.

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1  4007445 (Fla. Cir. Ct. Aug. 15, 2024) (excluding Dr. Bird's causation opinions that Plaintiff's

2  exposure to NDMA in Zantac caused him to develop prostate cancer); *Feindt v. United States*, No.

3  CV 22-00397 LEK-KJM, 2024 WL 1532747 (D. Haw. Apr. 9, 2024) (excluding certain of Dr. Bird's

4  causation opinions as unreliable for failure to properly apply the Bradford Hill criteria under Ninth

5  Circuit standards). But Dr. Bird's paper hardly bolsters her theory. Indeed, the publication is simply

6  a review of earlier studies and offers no original data to the body of existing science on breast cancer

7  risk. Notably, Dr. Bird acknowledged that "women with schizophrenia have elevated rates of breast

8  cancer risk factors, such as obesity, diabetes, and smoking" and stated that over-warning about

9  breast cancer may result in undertreating women with serious mental illness—factors that the FDA

10 considers in balancing warnings.[7] *See* 21 C.F.R. § 201.57(e) (2003) (warnings may only be added

11 when there is "reasonable evidence of an association of a serious hazard with the drug."). In any

12 event, all of the materials cited in Dr. Bird's analysis were publicly-available and at the FDA's

13 disposal before the most recent label changes for Risperdal became effective. Plaintiff's conclusory

14 assertions are not enough to plausibly overcome the lack of scientific evidence or the FDA's

15 findings, which were intentionally unequivocal as to Plaintiff's general causation theory. *See*

16 *Lightfoot v. Georgia-Pac. Wood Prods., LLC*, 5 F.4th 484, 494 (4th Cir. 2021) (existence of articles

17 raising possibility of "an association" incapable of triggering a duty to warn); *see also Hornsby v.*

18 *Alcoa, Inc.*, 715 F. App'x 642, 644 (9th Cir. 2017) (plaintiff failed to plausibly plead actual

19 knowledge to establish liability because his cited studies "merely show[ed] that a connection

20 between aluminum particles and pulmonary fibrosis [was] 'plausible' or 'thought to be directly

21 correlated'"). Even assuming that the 2025 label's discussion of inconsistent studies could be

22 construed as raising the ***possibility*** of causation, this Court has clearly stated that, "[l]eav[ing] the

23 causation question open is not enough" to plead causation, much less prove it. *See Becerra v. Dr*

24 *Pepper/Seven Up, Inc.*, No. 17-CV-05921-WHO, 2018 WL 3995832, at *8 (N.D. Cal. Aug. 21,

25 2018) (granting motion to dismiss where "[t]he studies [cited in the complaint] acknowledged their

26 own lack of causation evidence"), *aff'd*, 945 F.3d 1225 (9th Cir. 2019). Accordingly, Plaintiff has

27

28 [7] Bird, *supra* note 5, at 7.

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1    not—and cannot—show a plausible basis for her causal theory of breast cancer risk.

2        **B.**    **All of Plaintiff's Claims Are Impliedly Preempted by Federal Law.**

3        Not only are Plaintiff's claims implausibly pleaded, they are also preempted by federal law.

4    Federal law is "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State

5    to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, an obligation imposed by federal

6    law overrides any conflicting state-law requirement, such that state law is "impliedly pre-empted

7    where it is 'impossible for a private party to comply with both state and federal requirements.'"

8    *Bartlett*, 570 U.S. at 480 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *see also*

9    *Bartlett*, 570 U.S. at 486 ("When federal law forbids an action that state law requires, the state law

10   is 'without effect.'" (quoting *Maryland v. Louisiana*, 451 U.S. 725, 728 (1981))).

11       Under the FDA's CBE regulation, a drug manufacturer can make a change to a drug's label

12   based on "newly acquired information" that the drug causes a significant adverse reaction. *See*

13   *Albrecht*, 587 U.S. at 304-05. Newly acquired information means information available to the

14   manufacturer after the FDA approved the label and before the plaintiff's last use of the drug. *See*

15   *Wyeth*, 555 U.S. at 568-69; *Mahnke v. Bayer Corp.*, No. 2:19-cv-07271-RGK-MAA, 2019 WL

16   8621437, at *3 (C.D. Cal. Dec. 10, 2019) ("*Mahnke I*"); *Bueno v. Merck & Co.*, 746 F. Supp. 3d

17   853, 876-77 (S.D. Cal. 2024); *In re Incretin*, 524 F. Supp. 3d at 1028 (finding that failure to warn

18   claim was preempted where manufacturer had no newly acquired information and could not

19   unilaterally change drug label); *see also Roshkovan v. Bristol-Myers Squibb Co.*, No. 2:21-CV-

20   08590-FWS-AGR, 2023 WL 6787444, at *6-7 (C.D. Cal. Sept. 19, 2023) (dismissing claims on

21   preemption grounds where allegations regarding adverse-event reports, defendant's clinical trials,

22   and several medical articles published prior to plaintiff's alleged use of the prescription drug did not

23   constitute "newly acquired information"), *aff'd*, No. 23-2912, 2025 WL 972978 (9th Cir. Apr. 1,

24   2025).

25       To avoid preemption, a plaintiff must first make a threshold showing that the manufacturer

26   possessed "newly acquired information" to support the proposed label change. *In re Incretin*, 524

27   F. Supp. 3d at 1018; *Mahnke I*, 2019 WL 8621437, at *3; *Mahnke v. Bayer Corp.*, No. 2:19-CV-

28   07271-RGK-MAA, 2020 WL 2048622, at *2-3 (C.D. Cal. Mar. 10, 2020) ("*Mahnke II*"); *Bueno*,

1   746 F. Supp. 3d at 875. If the plaintiff cannot or does not plead the existence of newly acquired

2   information after the FDA approved the warning in a drug label, the complaint must be dismissed.

3   *See In re Incretin*, 524 F. Supp. 3d at 1018. However, when the plaintiff plausibly asserts the

4   existence of newly acquired information, "then the Court considers whether there is clear evidence

5   that 'the drug manufacturer fully informed the FDA of the justifications for the warning required by

6   state law and that the FDA, in turn, informed the drug manufacturer that the FDA would not approve

7   a change to the drug's label to include that warning.'" *Id.* (quoting *Albrecht*, 587 U.S. at 303). "If

8   the answer to the clear evidence question is yes, then the state law claim is preempted." *Id.*

9       Here, Plaintiff cannot demonstrate any newly-acquired information exists. Even if she

10  could, there is clear evidence that the FDA would have rejected a stronger breast cancer warning,

11  had Defendants attempted to add it based on the class-wide labeling changes it imposed in January

12  2025. *See id.* Either way, all of Plaintiff's claims are preempted and should be dismissed with

13  prejudice.[8]

14              **1.      Plaintiff Cannot Identify Any "Newly Acquired Information."**

15      As a threshold matter, Plaintiff has failed to plead any "newly acquired information"

16  supporting her causal theory, which would have required a stronger breast cancer warning at any

17  time. To the extent Plaintiff purports to claim that such information was available ***before*** the January

18  2025 label change and Plaintiff's last use of the drug, those claims are preempted because the FDA

19  conclusively found that the state of the science was "inconsistent," thereby rejecting a stronger

20  warning. *See* Yezbekyan Decl., **Ex. G**; **Ex. H**, at 17. To the extent Plaintiff asserts that such

21  information became available ***after*** the January 2025 label change, she has not plausibly (1)

22

---

23  [8] Additionally, to the extent Plaintiff asserts that JJIM concealed information from the FDA (*see,*

24  *e.g.*, FAC ¶¶ 82-92, 118), such claims are also preempted under *Buckman Co. v. Plaintiffs' Legal*
    *Comm.*, 531 U.S. 341 (2001) (holding that fraud on the FDA claims are impliedly preempted). *See*

25  *also Amiodarone Cases*, 84 Cal. App. 5th 1091, 1101-02 (2022) (holding plaintiffs' claims for strict
    liability and negligent failure to warn were preempted and concluding that, "because plaintiffs seek

26  to enforce FDA regulations, the claims are preempted as attempts to privately enforce the Federal
    Food, Drug, and Cosmetic Act (FDCA; 21 U.S.C. § 301 et seq.). And in doing so, we reject

27  plaintiffs' arguments that their claims have an independent basis in state law, concluding that
    plaintiffs fail to state such a claim.").

28

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT**

1  identified it; (2) pleaded that it would have affected the FDA's calculus; or (3) pleaded facts
2  suggesting that it has any bearing on her own use of the drugs, the timing of which is unknown.

3      According to Plaintiff, the last studies evaluating the potential association between
4  Defendants' products and breast cancer were published in April and December 2024[9]—at least one
5  month before the January 2025 class-wide label change became effective. *See* FAC ¶ 76. Plaintiff
6  does not plead that either of these studies (or their underlying data) were unavailable to or not
7  considered by the FDA at the time of its analysis, nor that they would even be relevant to her own
8  product use, without which she cannot prove causation on her warning-based claims. *See Mahnke*
9  *II*, 2020 WL 2048622, at *5 (holding that amended complaint failed to plausibly plead a labeling
10  deficiency that defendant could have corrected using a CBE regulation, as none of the evidence
11  plaintiff pointed to constituted "newly acquired information"). As discussed, the Bird publication,
12  which is the last available article, is nothing more than a review of ***prior*** studies—not new
13  information. It does not contain any original data that would have, or could have, affected the FDA's
14  analysis, nor does Plaintiff plead otherwise.[10] Given how recently the FDA evaluated breast cancer
15  risk, there is no reason to believe (and no plausibly pleaded allegations demonstrating that) this
16  single publication could constitute additional support for causation, tipping the balance in favor of
17  a stronger warning.

18      *Mahnke I* and *Mahnke II* are instructive. There, the plaintiff alleged that the defendant
19  manufacturer failed to adequately warn of the risks associated with prescription drug, Magnevist, a
20  gadolinium-based contrast agent used in MRI imaging. *Mahnke I*, 2019 WL 8621437, at *1.
21  Specifically, plaintiff asserted that Bayer should have warned of symptoms associated with
22  gadolinium retention ***prior*** to plaintiff's 2015 exposure to Magnevist, despite that the drug's label
23  discussed the potential presence of gadolinium deposits in the bone, liver, skin, brain and other

24

---

25  [9] Plaintiff inconsistently pleads the date that the Bird article was published in the FAC. *Compare*
26  FAC ¶ 76 (pleading that Bird article was published in December 2024), *with id.* at n.64 (citing Bird
    article as a 2025 publication). Either way, the Bird article does not constitute newly acquired
27  information for purposes of assessing causation or preemption.

28  [10] *See* Bird, *supra* note 5.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT

organs for months or years and stated that "the clinical significance of gadolinium retention in the body and brain is otherwise unknown." *Id.* at *3-4. Upon considering Bayer's motions to dismiss, the court ultimately dismissed plaintiff's strict liability, negligent failure to warn, and fraud claims, with prejudice, finding that the FDA had previously concluded that the clinical significance of the alleged risk was "unknown" and that plaintiff had not "connect[ed] the dots between gadolinium retention in the body and a *clinically significant adverse reaction*." *Mahnke II*, 2020 WL 2048622, at *3 (emphasis in original). Although the review paper plaintiff cited was published after the FDA's decision, the court nevertheless held that, "[t]he fact that the FDA approved such language supports the notion that there was no evidence of a causal association between [the drug] and a clinically significant adverse reaction as of [the date of FDA's label update]." *Mahnke I*, 2019 WL 8621437, at *4. As such, plaintiff's claims were preempted as a matter of law for failure to adequately plead relevant "newly acquired information" that would have enabled defendant to change its label under the CBE regulations. *Mahnke II*, 2020 WL 2048622, at *4-5.

The same conclusion is warranted here, where the FDA approved a class-wide label change just a few months ago, explicitly stating that the "[p]ublished epidemiologic studies have shown ***inconsistent results*** when exploring the potential association between hyperprolactinemia and breast cancer." *See* Yezbekyan Decl., **Ex. H**, at 17 (emphasis added). Just as in the *Mahnke* cases, the warning for which Plaintiff advocates contradicts FDA's conclusion, and a post-decision review article discussing the same underlying evidence (i.e., the Bird publication) is insufficient to demonstrate "newly acquired information." *See also In re Incretin*, 524 F. Supp. 3d at 1029 ("The FDA's finding of an indeterminate causal link between pancreatic cancer and incretin mimetics is not reasonable evidence of a causal association.").

Plaintiff's failure to identify "newly acquired information" not already considered by the FDA in reaching its conclusion, much less information revealing a risk of breast cancer of a different type or greater severity than that previously disclosed, is dispositive. *See, e.g.*, *Roshkovan*, 2023 WL 6787444, at *7 (dismissing negligent and strict liability failure-to-warn claims on preemption grounds where allegations of adverse-event reports did not sufficiently allege "newly acquired information," but rather "suggest[ed] that the FDA was aware of the adverse event reports but did

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1  not take further action"); *Bueno*, 746 F. Supp. 3d at 877-80 (reviewing state of scientific analysis in
2  finding no newly acquired information and dismissing claims on preemption grounds); *Warner v.*
3  *Amgen Inc.*, No. 1:24-CV-10632-JEK, 2025 WL 490720, at *9-12 (D. Mass. Feb. 13, 2025)
4  (reviewing published articles in finding no newly acquired information). Plaintiff's apparent (but
5  unfounded) disagreement with the FDA's analysis does not constitute newly acquired information
6  for purposes of this preemption analysis.

7     **2.**     **The 2025 Label Change Constitutes "Clear Evidence" that the FDA**
8                  **Would Have Rejected Plaintiff's Desired Warning.**

9      Even if Plaintiff had identified newly acquired information, her claims are nevertheless
10 preempted, given the FDA's recent conclusions. A failure to warn claim is preempted where there
11 is clear evidence the FDA would have rejected plaintiff's proposed warning. *See In re Incretin*, 524
12 F. Supp. 3d at 1016-17. The Supreme Court has defined "clear evidence" as "evidence that shows
13 the court that the drug manufacturer fully informed the FDA of the justifications for the warning
14 required by state law and that the FDA, in turn, informed the drug manufacturer that the FDA would
15 not approve a change to the drug's label to include that warning." *Albrecht*, 587 U.S. 299 at 303.
16 Here, the public record demonstrates just that.

17     The risk of hyperprolactinemia associated with antipsychotic medications has been known
18 since the 1970s, when the FDA first considered and adopted class-wide labeling. The Risperdal
19 label, which was first approved in 1993, has been periodically updated with newly acquired
20 information as it has become available, most recently in January 2025. *See* Yezbekyan Decl., **Exs.**
21 **A**, **F-H**. The 2025 label update was the product of the FDA's re-evaluation of this risk for all
22 antipsychotic medications and its review of relevant epidemiological studies, including those cited
23 in Plaintiff's FAC—the results of which the agency deemed "inconsistent." Yezbekyan Decl., **Ex.**
24 **G**; *see also id*., **Exs. A**, **F**, **H**.

25     Plaintiff argues that the Risperdal label should have included stronger language about breast
26 cancer risk. But directly warning of that risk is clearly what the FDA did ***not*** want manufacturers
27 to do, in light of its analysis. Had the FDA determined that a causal association between Risperdal
28 and breast cancer existed or that a different warning regarding a possible risk of breast cancer were

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

appropriate (as Plaintiff contends), it could have and would have mandated such a warning.  It did not.  *See* Yezbekyan Decl., **Ex. G**; *see also id*., **Ex. H**, at 17.  Put another way, given that "the FDA decline[d] to require a label change despite having received and considered information regarding a new risk, the logical conclusion is that the FDA determined that a label change was unjustified." *See Albrecht*, 587 U.S. at 324 (Alito, J., concurring).  Such a conclusion is "clear evidence" that the FDA would have rejected Plaintiff's proposed label, and Plaintiff's claims are therefore preempted.

> ### 3. To the Extent Plaintiff Pleads a Design Defect Under Count II (General Negligence), It Is Preempted by Federal Law.

To the extent Plaintiff alleges a negligent design defect claim in her catch-all general negligence cause of action, that claim is also preempted.  *See, e.g.*, *Mahnke I*, 2019 WL 8621437, at *5 ("The Court agrees that Plaintiff's [negligence] design defect claim is preempted. . . . Accordingly, Plaintiff's design defect claim is dismissed with prejudice."); *Trejo v. Johnson & Johnson*, 220 Cal. Rptr. 3d 127, 164 (Cal. Ct. App. 2017) (holding that plaintiff's design defect claim was preempted where "defendants could not unilaterally change the chemical composition of Motrin from ibuprofen to dexibuprofen in order to satisfy consumer expectations or to increase the benefits or decrease the risks of Motrin"); *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 185 (S.D.N.Y. 2016) (holding under California law that "[t]he plaintiffs' negligent design defect claim is preempted"); *Evans v. Gilead Scis., Inc.*, No. 20-CV-00123-DKW-KJM, 2020 WL 5189995, at *10, *13 n.19 (D. Haw. Aug. 31, 2020) (holding that plaintiff's negligent and strict liability "design defect claims are dismissed with prejudice as preempted by the FDCA").

"Once a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.'" *Bartlett*, 570 U.S. at 477 (quoting 21 C.F.R. § 314.70(b)(2)(i)).  As detailed above, Risperdal was approved by the FDA as safe and effective as designed and is subject to the dictates of the FDCA. Here, Plaintiff makes no claim regarding how JJIM could have unilaterally changed Risperdal's formulation, given the regulatory bar to altering a drug's design after it has been approved.  *See* 21 C.F.R. § 314.70(b)(2)(i); *Bartlett*, 570 U.S. at 477, 484; *see also Utts*, 226 F. Supp. 3d at 186

(applying California law and stating that "[l]eave to amend is inappropriate for [plaintiff's design defect] claim" where "[t]he complaint's allegations of harm due to the design defect go to the nature of the composition of the drug[,]" and "defendants had no ability to alter that composition without prior approval of the FDA" (internal citation omitted)). To the extent Plaintiff attempts to argue that JJIM should have stopped selling Risperdal because of alleged risks, those claims are also preempted. *See Bartlett*, 570 U.S. at 488 (rejecting "'stop-selling' rationale as incompatible with [the Supreme Court's] pre-emption jurisprudence"); *Mahnke I*, 2019 WL 8621437, at \*5 (agreeing with *Bartlett* in rejection of "stop-selling" rationale). Because federal law precluded JJIM from unilaterally making the changes contemplated by Plaintiff's claim—*i.e.*, implementing a purported alternative design (*see* FAC ¶ 126(h))—Plaintiff's design defect claim is preempted by federal law and should be dismissed with prejudice.

**C.     The Balance of Plaintiff's "General Negligence" Allegations Fail Independently.**

Apart from failure to warn allegations, the hodge podge of assertions contained in Plaintiff's "General Negligence" claim are not viable under California law.

First, to the extent Plaintiff alleges a failure to test, surveil, or analyze Risperdal, those claims fail. Testing, surveillance, and analysis do not constitute independent claims under California law and have "no significance apart from the results of the product's design and manufacture and the relevant warnings." *Valentine v. Baxter Healthcare Corp.*, 81 Cal. Rptr. 2d 252, 264 (Cal. Ct. App. 1999). "[U]nless the manufacturer's breach of its duty to test leads the manufacturer to produce a product that is defective in design, manufacture, or warning, no injury can result." *Id.* at 265 (quoting *Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1527 (D. Minn. 1989)). Put differently, a failure to test claim is subsumed by design defect, manufacturing defect, and failure to warn claims. *See id.*; *see also Todd v. Stryker Corp.*, No. 2:09-CV-01509-JAM, 2012 WL 2922727, at \*6 n.6 (E.D. Cal. May 1, 2012) ("California law does not impose a duty to test on makers of prescription products[.]"); *Latiolais v. Merck & Co.*, No. CV 06-02208 MRP (JTLx), 2007 WL 5861354, at \*3 n.1 (C.D. Cal. Feb. 6, 2007) (failure to test theory of liability "is subsumed by the manufacturer's duty to warn"), *aff'd*, 302 F. App'x 756 (9th Cir. 2008). Thus, Plaintiff's laundry list of purported duties are not recognized under California law and must be dismissed. *See* FAC

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

1    ¶¶ 122, 126.

2         Moreover, to the extent Plaintiff re-alleges a failure to warn claim in her catch-all negligence

3    count, that claim fails for the same reasons outlined above. *See supra* Sections IV.A.1-2.

4    Additionally, this cause of action should be dismissed as a matter of law to the extent it is duplicative

5    and redundant of Plaintiff's third cause of action for negligence – failure to warn (Count III).

6    *Compare* FAC ¶¶ 121-132 (Count II), *with* FAC ¶¶ 133-150 (Count III); *see* Fed. R. Civ. P. 12(f);

7    *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) (claims which merely duplicate other claims in a

8    pleading are properly dismissed).

9         **D.     Plaintiff's Fraud Claim (Count IV) Fails Because Plaintiff Does Not and Cannot**

10              **Satisfy the Heightened Pleading Standard Under Rule 9(b).**

11        Plaintiff's fraud claim is deficient because she has not pleaded the requisite level of

12   particularity required by Rule 9(b).  To comply with the Rule, allegations of fraud must be "specific

13   enough to give defendants notice of the particular misconduct which is alleged to constitute the

14   fraud charged so that they can defend against the charge and not just deny that they have done

15   nothing wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quoting *Semegen v.*

16   *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The pleader must sufficiently allege: (1) the time,

17   place, and content of any allegedly false representation; (2) the facts misrepresented; (3) the identity

18   of the perpetrator; and (4) the object given up or obtained as a consequence of the fraud.  *Vess v.*

19   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (the heightened standard for fraud

20   claims requires a plaintiff to allege "the who, what, when, where, and how" of the alleged fraud);

21   *United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1152 (C.D. Cal. 2005) ("Rule 9 (b)

22   requires allegations of fraud to 'state the time, place, and specific content of the false representations

23   as well as the identities of the parties to the misrepresentation.'" (quoting *Schreiber Distrib. Co. v.*

24   *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))).

25        Plaintiff alleges that Defendants collectively made various omissions of risk information in

26   product labels and statements, without any facts supporting the who, what, when, and where

27   required by Rule 9(b).  *See* FAC ¶¶ 154-155.  Critically, Plaintiff fails to assert any allegations

28   specific to JJIM—a fatal flaw to any fraud claim under Rule 9(b).  *See Sherman*, 2009 WL 2241664,

at *2 (dismissing negligent and fraudulent misrepresentation claims where plaintiff "[did] not differentiate these claims as to [one defendant] and the other defendants" and failed to "specifically allege 'the role of each defendant in each scheme'" (quoting *Lancaster*, 940 F.2d at 405)).

Moreover, Plaintiff's allegations of omission and concealment are impossible to square with her own simultaneous allegations that the risks of antipsychotic medications, hyperprolactinemia, and breast cancer have been well known and accepted in the scientific community for decades. *Compare* FAC ¶ 53 ("It has been well known within the scientific community since at least the 1970s that hyperprolactinemia can cause breast cancer. And, since at least the 1990s, there has been common scientific consensus that atypical antipsychotics, such as Defendants' Drugs, can cause hyperprolactinemia."), *with* FAC ¶ 154(a)-(g) (providing generalizations and conclusory statements that Defendants suppressed, mischaracterized, or failed to disclose information about breast cancer risk). And to the extent Plaintiff asserts that JJIM concealed information from the FDA, those claims are preempted, as noted above. *See Buckman*, 531 U.S. at 348 ("the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and … this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives. The balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law."); *Amiodarone Cases*, 84 Cal. App. 5th at 1101-02 ("because plaintiffs seek to enforce FDA regulations, the claims are preempted as attempts to privately enforce the Federal Food, Drug, and Cosmetic Act (FDCA; 21 U.S.C. § 301 et seq.").

In short, Plaintiff fails to explain with any specific facts or details how Defendants perpetuated an alleged, decades-long fraud on the scientific community (or the FDA), when she simultaneously asserts that the community was already aware of those risks. Without the critical, "who, what, when, where, and how" of JJIM's alleged fraud, Plaintiff's fraud claims must be dismissed.

### E.     Plaintiff's Prayer for (and Allegations Regarding) Punitive Damages Should Be Stricken.

The purpose of exemplary or punitive damages is not to compensate a plaintiff, but to punish a defendant and deter similar conduct in the future. As such, punitive damages have traditionally

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

been limited to situations where a defendant's conduct is "outrageous" due to "gross negligence, willful, wanton, and reckless indifference for the rights of others, or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (cleaned up).  To survive a motion to dismiss on a punitive damages claim, Plaintiff "must allege sufficient facts to state a plausible claim that [Defendant] engaged in vile, base, and contemptible conduct." *See Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *5 (N.D. Cal. May 31, 2011) (dismissing punitive damages claim because allegations were "merely conclusory statements not entitled to the presumption of truth under *Iqbal* and *Twombly*").

Here, aside from making the conclusory assertion that "Drug Makers' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice," (FAC ¶ 94), Plaintiff has not alleged any conduct specific on the part of JJIM that was sufficiently reprehensible to justify an award of punitive damages—especially given the FDA's conclusions regarding the "inconsistent" studies supporting its January 2025 conclusion and its mandate of the very warnings on Risperdal products over the last several decades.

## V.   CONCLUSION

The JJIM Defendants and Johnson & Johnson respectfully request that the Court dismiss Plaintiff's FAC with prejudice, as any amendment would be futile for the reasons set forth above.

Dated: May 23, 2025

**BARNES & THORNBURG LLP**

By:   */S/ Mihran Yezbekyan*
      Robyn S. Maguire (*pro hac vice forthcoming*)
      Mihran Yezbekyan
      Erin M. Gilmore
      Attorneys for Defendants JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; and JANSSEN RESEARCH & DEVELOPMENT, LLC

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**